1 .EVANGELINE F. GROSSMAN State Bar No.176014
egrossman@efglawyer.com
2 TONNA K. FAXON State Bar No. 237605
tfaxon@efglawyer.com
3 **EVANGELINE FISHER GROSSMAN LAW**
330 North Indian Hill Boulevard
4 Claremont, California 91711
Telephone: (909)626-1934
5 Facsimile: (909)626-1900

6 Attorneys for Plaintiffs

7

8

9                   UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13 ZAREK DIETZ AND KRISTIN DIETZ,    Case No.

14            Plaintiff,              **COMPLAINT AND DEMAND FOR JURY TRIAL**

15 v.                                 **1. BREACH OF CONTRACT**

16
   SAFECO INSURANCE COMPANY OF        **2. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
17 AMERICA, a New Hampshire
   corporation; LIBERTY MUTUAL
18 GROUP, INC., a Massachusetts       **3. UNJUST ENRICHMENT**
   corporation; and DOES 1 to 10, Inclusive;
19
            Defendants.
20

21

22                   **I. NATURE OF THE CASE**

23       1.      Zarek Dietz and Kristin Dietz (hereinafter, collectively referred to as

24 "Dietz" or "Plaintiffs") vacation home sustained damaged from the major snowstorms

25 that occurred in Bass Lake, California from January to February 2023, Safeco

26 Insurance Company of America-Liberty Mutual Group, Inc. (hereinafter "Safeco-

27 Liberty Mutual" or "Defendant"), and fully complying with the insurance policy's

28 provisions, Defendant Safeco-Liberty Mutual failed to adjust the claim in a fair and

Evangeline
Fisher
Grossman
Law

1  reasonable manner. Moreover, since Plaintiffs have dutifully paid their insurance
2  premiums while fulfilling the policy's requirements and cooperating at all times
3  during the claim handling process, Defendant Safeco-Liberty Mutual has been
4  unjustly enriched in receiving the benefits of the insurance contract premiums
5  received from the Plaintiffs while refusing to honor it. Plaintiffs, therefore, bring this
6  civil action against Defendant Safeco-Liberty Mutual for breach of contract, breach of
7  the implied covenant of good faith, conversion and unjust enrichment.

8  ## II. THE PARTIES

9      2.    Plaintiffs Zarek and Kristin Dietz are and at all relevant times owned a
10  second home in the City of Bass Lake, California. Plaintiffs maintain a permanent
11  residence and are domiciled at 5823 Vesper Avenue, Van Nuys, CA 91411.

12      3.    Plaintiffs are informed, believe and allege that defendant Safeco
13  Insurance Company of America ("Safeco") is an insurance company incorporated
14  under the laws of the State of New Hampshire and is authorized to transact business
15  in and is transacting business in the State of California, with its principal place of
16  business located at 100 Liberty Way, Dover, New Hampshire 03820. Safeco's agent
17  for service of process in California is Corporation Service Company which will do
18  Business in California as CSC—Lawyers Incorporating Service located at 2710
19  Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

20      4.    The Plaintiffs are informed, believe and allege that Defendant Liberty
21  Mutual Group, Inc. ("Liberty Mutual") is an insurance company incorporated under
22  the laws of the State of Massachusetts and is authorized to transact business in and is
23  transacting business in the State of California, with its principal place of business
24  located at 175 Berkeley St., Boston, Massachusetts. Liberty Mutual's agent for
25  service of process in California is Corporation Service Company which will do
26  Business in California as CSC—Lawyers Incorporating Service located at 2710
27  Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**

5.     Plaintiffs are informed, believe and allege that Liberty Mutual is the parent company of Safeco. Based on Safeco Insurance's website: "Safeco…became a part of Liberty Mutual Insurance in 2008. With Liberty Mutual as its parent company, Safeco has been able to concentrate exclusively on personal insurance." Additional information obtained from Safeco Insurance's internet website includes the following:

> Safeco Insurance is a trade name used by a division of Liberty Mutual Group that distributes insurance products primarily through independent agents and brokers. Safeco Insurance markets and underwrites insurance policies issued by certain Liberty Mutual Group Inc. stock insurance company subsidiaries and affiliated insurers. Liberty Mutual Group Inc. is a subsidiary of Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company.

6.     The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, are unknown to Plaintiffs, who therefore designates those defendants by these fictitious names. Each of the defendants sued therefore as a DOE is legally responsible in some manner for the events and happenings referred to and proximately caused the injuries suffered by Plaintiffs. Plaintiffs will amend this complaint as necessary to allege DOE defendants' identities when the same becomes known to Plaintiffs.

7.     Plaintiffs are informed, believe and allege that at all relevant times each of the Defendants was the agent and employee of each of the remaining defendants, and in their actions and inactions alleged were within the course and scope of such agency and employment.

### III. JURISDICTION AND VENUE

8.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because Plaintiffs are not citizens of the same state as the Defendants and the amount in controversy exceeds $75,000.  Venue in this Court is appropriate under 28 U.S.C. §1391(b)(1) and 1391(c)(2) because Safeco-Liberty Mutual resides in and is authorized to do business in California, the policy of issue in this case was sold to

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    Plaintiffs in by Defendants in Los Angeles, California, and Safeco-Liberty Mutual is
2    subject to the Court's personal jurisdiction with respect to the civil action in question.

### IV. FACTUAL BACKGROUND

4        9.    The claims handling practices Safeco-Liberty Mutual engaged in with its
5    six desk adjusters and at least three field adjusters assigned to Plaintiffs' claim
6    evidences the clear breach of the terms of the subject insurance policy, and bad faith.

7        10.    As long-time residents of California, with a permanent residence located
8    at 5823 Vesper Avenue, Van Nuys, CA 991411, Plaintiffs purchased insurance and
9    were insured under policy number OA5100648 (the "Policy") for comprehensive
10   coverage for their second home located at 53703 Oak, Bass Lake, California 93604.
11   A true and correct copy of the Policy is attached hereto as **Exhibit A** and incorporated
12   herein by reference.

13       11.    On or about January and February of 2023, Plaintiffs' vacation home
14   sustained damage from record winter snow storms that occurred in Bass Lake.

15       12.    On March 3, 2023, the Plaintiffs contacted their insurance agent to
16   inform him of damage to their home that they were able to confirm through
17   surveillance cameras and reports from neighbors. On the same date, the Plaintiffs
18   personally viewed the home to assess the damage and to try to temporarily seal off the
19   hole in the roof.

20       13.    The house had enormous amounts of snow on it; the weight of the snow
21   on the roof had ripped the chimney off of the house, which landed on the staircase,
22   breaking the railing and splitting the stringers. Inside the home, the master bedroom
23   floor (carpeted) was covered with snow from the hole in the roof where the missing
24   fireplace used to be. The carpet was soaked and smelled funny. Plaintiffs spent the
25   next day shoveling all the snow off the decks and carport and sealing up the hole in
26   the roof to the best of their ability while it continued to snow.

27

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**

14.   On or about March 6, 2023, the Plaintiffs filled out the claim paperwork for Safeco.  Safeco informed Mr. Dietz the next day that claim representative, Dustin Crocker, was assigned to their claim.

15.   Plaintiffs did not hear from Dustin Crocker, so they called Safeco and learned the claim had been reassigned to Bryce Buckley. Mr. Buckley scheduled a field adjuster named Skylar to inspect the property on March 17, 2023.  The damage then known included (but was not limited to):

**Master Bedroom**

1. Wet carpet in bedroom and possible damaged floor structure from snow sitting on it. Possible mold.

**Main Level**

1. Fireplace gas heater - not sure if it works anymore - water damage. It was out when we arrived, snow had filled the chimney, the propane was still on.

2. Wetness/water on fireplace bricks - discolored and moldy.

3. Floor buckling and is now creaking when you walk on it (replace).

4. Damage to walls under dining window and above slider and by front door.

**Bottom Level**

1. Spiral staircase wall separating from water damage inside the walls.

2. Leak on bottom level ceiling. Ceiling tiles need to be replaced (it is a dropped ceiling). Evaluation needs to occur to check for any other damage when ceiling is opened up.

3. North Wall damaged and compromised.

4. Fireplace gas heater blower fan burned out - from running 24/7 to compensate for other heater being out.

5. Wet, dirty carpet on lower level of home

**Outside and Top Deck**

1. House exterior wall damaged. Snow was up against it and water intruded in through this wall.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

2. Railings broken and very loose

3. Back main level deck sloping down/ support falling over, damaged supports.

4. Main level Deck unsafe. It is a wrap-around deck around the whole house.

5. Staircase stringers split/damaged and now wobbly.

6. Steps Railing broken by fall of chimney.

7. Chimney missing from roof needs replacing as well as piping inside, fix roof shingles and any other damage inside the chimney as it leads into the house.

8. Cracks in roof fascia.

9. Table and fire pit covers torn.

10. Deck supports broken.

11. Damaged deck supports.

**Bottom Level Deck**

1. Not safe - replace staircase - stringers split.

2. Fix all supports.

**Driveway**

1. Carport/RV Cover destroyed.

2. Garage roof repair by eaves, broken from carport being attached to it.

3. Concrete block wall caps loose due to carport damage.

4. Garage door not going up. Compromised from carport damage.

16.     On March 17, 2023, the Plaintiffs met with an individual sent by Safeco-Liberty Mutual named Skylar (or, Skyler), who inspected the property.  Despite Skylar's inspection and comments that he'd submit his estimate promptly to Safeco, over two weeks passed without word from Safeco.  Meanwhile, more snow, then rain, was affecting the already-damaged property.

17.     After calling Safeco multiple times asking about the report from Skylar, Mr. Dietz was told by a Safeco employee they allegedly "did not receive the report from Skylar", so Safeco wanted to send a different adjuster and an engineer.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

18.    On information and belief, discoverable communications exist between Defendants and with Skylar and are in Defendants' possession concerning his report.

19.    Mr. Dietz called time and time again to try to have the second inspection scheduled – with the inspection ultimately not taking place until April 20, 2023.  By this time, yet another adjuster had been assigned to the claim, Marie Jackson.

20.    On April 27, 2023, Safeco wrote to Mr. Dietz stating "our evaluation is complete, and we calculated the amount of coverage available under your policy." Safeco had concluded the payment owed for covered damages totaled only $20,353.86, after deduction of "recoverable depreciation" ($935.58), "deductible" ($5,000.00), "non-recoverable depreciation" ($1,522.48) and "paid when occurred" ($635.34), despite the substantial damage to the Plaintiffs' home.

21.    For months following Safeco's April "settlement" determination, the Plaintiffs asked Safeco-Liberty Mutual to properly scope and bid the damage.  This has not yet occurred.  Given the remote location of the insured property, it's a substantial hardship on Plaintiffs to obtain multiple estimates as requested by Safeco.

22.    Given the remote location of the insured property, it's also difficult to find contractors who will repair the home, and materials are expensive to have shipped or delivered to the area from Fresno or other locations (which Safeco-Liberty Mutual has never properly accounted for in its estimate).

23.    Yet, Safeco-Liberty Mutual asked the Plaintiffs to acquire multiple repair estimates in violation of the California Insurance Code, despite being provided a repair estimate from a licensed contractor willing to do the work at the Plaintiffs' property early in the claim.

24.    On October 5, 2023, Plaintiffs' counsel informed Safeco-Liberty Mutual by letter that Plaintiffs were represented.  In that letter, Plaintiffs' counsel requested a certified copy of the applicable policy and declaration page in effect on the date of the loss, as well as all claim related documents they were entitled to receive within fifteen days of the request pursuant to Cal. Ins. Code § 2071, including "all documents that

**COMPLAINT AND DEMAND FOR JURY TRIAL**

relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third-party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs."

25.    In the same October 5, 2023 letter, Plaintiffs' counsel further advised Safeco-Liberty Mutual, "from this point forward, all correspondence, communication(s) and payments should be directed to this firm."

26.    Disregarding the letter of representation from Plaintiffs' counsel, on October 10, 2023, Safeco sent a text directly to Mr. Dietz stating "Safeco:  Dre jana has been assigned to your claim and will contact you."

27.    Plaintiffs' counsel thereafter wrote to the Property Claims Department on October 11, 2023 asking that Safeco-Liberty Mutual immediately cease and desist all communication with the clients, as they are represented.  Counsel received an "auto reply" email from Bryce Buckley of Safeco-Liberty Mutual advising that he was no longer handling claims and to reach out to Mike Benavides for further assistance.

28.    On October 19, 2023, Plaintiffs' counsel thereafter sent a "Second Request" letter to Mr. Venavides again requesting all claim related documents pursuant to Cal. Ins. Code § 2071 along with a certified copy of the applicable policy and declaration page in effect on the date of loss.

29.    On October 20, 2023, a new adjuster, Jatina Pettaway, sent a letter to Plaintiffs' counsel informing that she "will now be handling the Building and Dwelling portion of the claim."   Another letter, of the same date, was also sent from Ms. Pettaway, wherein she acknowledged receipt of the letter of representation from Plaintiffs' counsel, stating "Please be advised I am the Claims Representative assigned to this Homeowner's Liability Claim."   Yet, none of the requested claim documents were provided with either of the October 20, 2023 letters.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

30. On October 20, 2023, Ms. Pettaway later also sent an email to Plaintiffs' counsel advising that she was the newly assigned CE, and she "attached a copy of the estimate and settlement letter for your records."  Attached to her email were four documents: an April 27, 2023 settlement letter; the J. Shield Engineer Report; an estimate prepared for Safeco-Liberty Mutual dated 4/24/23 with a Net Estimate of $20,353.86; and the Lloren Construction Estimate dated 5/9/23 totaling $208,130.00.

31. In response, Plaintiffs' counsel's office replied to Safeco-Liberty Mutual stating, "Thank you for providing some of the claim related documents. Can you please send us a certified copy of the insurance policy and declaration page, any breakdown of payments made on the claim, any and all estimates from Safeco/Liberty Mutual or its third-party vendors, any denial letter(s), and a status of the claim. (open or closed, calculated statute)."  As of the filing of this Complaint, no other claim related documents have been received from Safeco-Liberty Mutual.

32. Thereafter, a Safeco-Liberty Mutual field adjuster left voicemail messages with Plaintiffs' counsel's firm over a weekend when the office was closed, requesting another site inspection.  The following Monday morning, Plaintiffs' counsel wrote to Ms. Pettaway informing her of the weekend messages requesting a site inspection, confirming Plaintiffs would cooperatively agree to another site inspection.

33. On November 16, 2023, Safeco-Liberty Mutual conducted another inspection of the home where in the Plaintiffs and their contractor attended.  The field adjuster informed Mr. Dietz during the inspection that he'd have his report to Safeco the next day.

34. On November 16, 2023, Plaintiffs also had an inspection done by The Stove Doctor.  The Stove Doctor also shared the following information with Safeco-Liberty Mutual:  The current gas heating fireplace is an insert placed inside what is a factory-built wood burning brick fireplace. According to Mountain Comforts in Oakhurst, CA, the supplier and installer in the area, replacing just the insert is not an

1   option anymore. The newer inserts are larger and would not fit in the current opening.

2   In addition, new codes will not allow the same type to be installed anymore. They

3   now require a built in. Thus, the old brick will have to be torn out, a new frame built

4   to code and measurements of current-day inserts, and rebuilt to code to accommodate

5   the new type of gas heating stoves. The wall and ceiling will have to be repaired to

6   match and new vent pipes installed. Electrical will also have to be removed and

7   replaced as there are outlets on the fireplace brick for lighting.

8       35.    Plaintiffs further provided to Safeco-Liberty Mutual a supplemental

9   estimate from Lloren Construction for the associated construction costs.

10      36.    Plaintiffs' counsel further notified Safeco-Liberty Mutual in November

11  that the repair and rebuild is a high priority. The fireplace heater is the main form of

12  heat for the house in the winter months. It also helps keep the house from going

13  below 45 degrees during the winter freezing temperatures, which keeps the pipes in

14  the house from freezing and bursting.

15      37.    Plaintiffs' counsel further informed Safeco-Liberty Mutual in November

16  that tearing out the current fireplace and brick will affect the laminate floor as well

17  which is already damaged from the water getting underneath it.

18      38.    Following the November 16, 2023 inspection, and despite the field

19  adjuster stating that his report would be provided to Safeco by November 17, 2023,

20  Safeco-Liberty Mutual delayed until November 30, 2023 to report on the results of

21  the inspection.

22      39.    Again, despite having been informed of Plaintiffs' representation by

23  counsel, Safeco-Liberty Mutual again communicated directly with Plaintiffs via letter

24  dated November 30, 2023 – sent only to Plaintiffs at 5823 Vesper Ave, Van Nuys,

25  CA 91411.  Plaintiffs did not receive the letter until December 13, 2023, wherein

26  Safeco-Liberty Mutual wrote that "[a]fter evaluating your claim, we were unable to

27  identify any additional damages on the reinspection performed on 11/16/23.  At this

28  point, we can close your claim.  As always, your policy protects you when physical

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1  damage occurs from a covered event, and we're here to help you if you need it in the

2  future."

3      40.    Safeco-Liberty Mutual has unreasonably delayed payment of policy

4  benefits, which constitutes a breach of contract and is a breach of the implied

5  covenant of good faith and fair dealing.

6                **FIRST CAUSE OF ACTION BREACH OF CONTRACT**

7        (Against SAFECO INSURANCE and LIBERTY MUTUAL Defendants, and

8                            the DOE Defendants)

9      41.    Plaintiffs refer to all preceding paragraphs and incorporate them in full in

10  this cause of action.

11     42.    At all material times herein, the Plaintiffs had a policy of insurance for

12  their home through Safeco Insurance.

13     43.    According to the contract's terms, Safeco-Liberty Mutual agreed to

14  provide coverage to Plaintiffs for loss or damage to their property arising out of a

15  covered loss, such as Plaintiffs' Loss (as defined above). In the event of a covered loss

16  the Policy covers Dwelling Repairs, Personal Property and Loss of Use.

17     44.    The Policy provides coverage for accidental direct physical loss to the

18  insured dwelling.

19     45.    The Policy provides coverage for resulting loss from weather conditions.

20     46.    Plaintiffs fulfilled all of their obligations under the contract. Plaintiffs

21  paid the premiums and performed or substantially performed the promises they made

22  under the contract, including promptly notifying Safeco-Liberty Mutual of the loss. In

23  the alternative, any obligation or requirement that they may have failed to fulfill was

24  immaterial to Safeco-Liberty Mutual's decision to enter into the contract and to its

25  claims handling conduct.

26     47.    Plaintiffs have suffered covered losses in excess of $230,000, yet Safeco-

27  Liberty Mutual has only paid $20,353.86 in policy benefits.

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**

48.    Safeco-Liberty Mutual breached its duties under the Policy by failing to
provide the promised insurance coverage for the loss sustained by Plaintiffs. Plaintiffs
have suffered damages as a direct and proximate result of its breach. In addition to
being denied the policy's benefits after a loss, Plaintiffs were forced to retain counsel
to obtain the Policy benefits owed by Safeco-Liberty Mutual.

## SECOND CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

(Against SAFECO INSURANCE and LIBERTY MUTUAL Defendants, and
the DOE Defendants)

49.    Plaintiffs refer to all preceding paragraphs and incorporate them in full in
this cause of action.

50.    Safeco's claims handling practices are violative of the California Fair
Claims Settlement Practices Regulations (10 CCR 2695.7) which states,

> (b) Upon receiving proof of claim, every insurer […] shall
> immediately, but in no event more than forty (40) calendar days later,
> accept or deny the claim, in whole or in part. The amounts accepted or
> denied shall be clearly documented in the claim file unless the claim
> has been denied in its entirety.
>
> (1) Where an insurer denies or rejects a first party claim, in whole or
> in part, it shall do so in writing and shall provide to the claimant a
> statement listing all bases for such rejection or denial and the factual
> and legal bases for each reason given for such rejection or denial
> which is then within the insurer's knowledge. Where an insurer's
> denial of a first party claim, in whole or in part, is based on a specific
> statute, applicable law or policy provision, condition or exclusion, the
> written denial shall include reference thereto and provide an
> explanation of the application of the statute, applicable law or
> provision, condition or exclusion to the claim. […]

COMPLAINT AND DEMAND FOR JURY TRIAL

51.   This was never provided by Safeco-Liberty Mutual. When more than 40 days is needed to accept or deny a claim, an insurer must let an insured know in writing within those 40 days and specify whether additional information is needed. This was not done in this claim.

52.   Moreover, written status updates must be provided every 30 days until a claim determination is made. Nor was this satisfied in this claim.

53.   The California Fair Claims Settlement Practices Regulations further provides,

>   (d) Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation and shall not persist in seeking information not reasonably required for or material to the resolution of a claim dispute.

Yet, Safeco asked Mr. Dietz to acquire multiple repair estimates despite him providing a repair estimate from a licensed contractor willing to do the work at the insureds' property early in the claim.

54.   In every insurance policy there exists an implied duty of good faith and fair dealing that the insurance company will not do anything to injure the rights of the insured to receive the benefit of the Policy. Safeco-Liberty Mutual breached its duty of good faith and fair dealing owed to Plaintiffs, including but not limited to, the following respects:

>   a.   Unreasonably and in bad faith, placed its own financial interests ahead of its insured in violation of California's statutory, regulatory and common law;
>
>   b.   Unreasonably and in bad faith failed to give at least as much consideration to the interests of its insured as it gave its own interests;
>
>   c.   Unreasonably and in bad faith provided inaccurate, untruthful and misleading information to Plaintiffs;

**COMPLAINT AND DEMAND FOR JURY TRIAL**

d.  Unreasonably and in bad faith failed to retain independent experts to assist in the fair, reasonable, objective and prompt investigation of the claim;

e.  Unreasonably and in bad faith withheld payment of sums due and owing Plaintiffs;

f.  Unreasonably and in bad faith failed to reasonably investigate and process Plaintiffs' claim for benefits;

g.  Unreasonably and in bad faith failed to objectively investigate the claim;

h.  Unreasonably and in bad faith failed to thoroughly investigate the claim;

i.  Unreasonably and in bad faith ignored evidence supporting coverage;

j.  Unreasonably and in bad faith failed to search diligently for evidence that supported payment of the claim;

k.  Failing, refusing and neglecting to comply with Cal. Ins. Code § 2071, including in not providing all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third-party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs, including all documents and communications with the first field adjuster assigned to the claim, "Skylar";

l.  Unreasonably and in bad faith compelled Plaintiffs to institute litigation to recover amounts due under the insurance Policy.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

55.     Safeco-Liberty Mutual's pattern of unfair practices constitutes institutional bad faith and evidences a conscious course of wrongful conduct that is firmly grounded in established company policy.

56.     Plaintiffs are informed, believe and allege that Safeco-Liberty Mutual committed institutional bad faith by other acts and omissions of which they are presently unaware but will be shown according to proof at trial.

57.     Safeco-Liberty Mutual's conduct was undertaken or approved by its officers or managing agents, who are and were responsible for claims supervision, operations, communications, and decisions. This unreasonable conduct was undertaken on behalf of Safeco-Liberty Mutual.

58.     Safeco-Liberty Mutual had advance knowledge of the actions and conduct of said individuals and the conduct was ratified, authorized and approved by the insurer, including managing agents whose precise identities are unknown to Plaintiffs at this time and therefore identified and designated as Does 1 through 10.

59.     As a further proximate result of Safeco-Liberty Mutual's unreasonable conduct Plaintiffs were compelled to retain legal counsel to obtain the benefits due under the policy, and is liable to Plaintiffs for attorney fees, witness fees and costs of litigation reasonably necessary and incurred by him in order to obtain the Policy's benefits.

60.     Safeco-Liberty Mutual intended for its conduct to cause injury to Plaintiffs. Safeco-Liberty Mutual engaged in despicable conduct carried out with a willful and conscious disregard of their rights and/or subjected them to cruel and unjust hardship in conscious disregard of their rights.

61.     Safeco-Liberty Mutual's conduct caused Plaintiffs substantial emotional distress.

62.     Safeco-Liberty Mutual's conduct constituted an intentional misrepresentation, deceit or concealment of material facts known to Safeco-Liberty

1  Mutual with the intention of depriving Plaintiffs of property, legal rights and/or of
2  causing other injury.

3      63.    Safeco-Liberty Mutual's conduct constitutes malice, oppression or fraud
4  under California Civil Code § 3294, entitling Plaintiffs to punitive damages in an
5  amount appropriate to punish or set an example of Safeco-Liberty Mutual and deter
6  future similar conduct.

7              **THIRD CAUSE OF ACTION UNJUST ENRICHMENT**

8          (Against SAFECO INSURANCE and LIBERTY MUTUAL Defendants and

9                           the DOE Defendants)

10     64.    Plaintiffs refer to all preceding paragraphs and incorporates them in full
11  in this cause of action.

12     65.    Safeco-Liberty Mutual should not be permitted to unjustly enrich itself at
13  the expense of another without making restitution of or for property or benefits
14  received, retained, or appropriated, where it is just and equitable that such restitution
15  be made.

16     66.    As a result of the breaches by and wrongful acts of Safeco-Liberty
17  Mutual, they have been unjustly enriched at the expense of Plaintiffs. Safeco-Liberty
18  Mutual have derived and continue to derive a benefit from failing to perform their
19  contractual obligations pursuant to the insurance contract with Plaintiffs.

20     67.    Plaintiffs have dutifully paid the insurance premiums due under the
21  insurance contract with Safeco-Liberty Mutual and Safeco-Liberty Mutual, having
22  received the benefits of the insurance contract, have wrongfully withheld, retained,
23  and/or interfered with Plaintiffs' legal rights under the insurance contract. Plaintiffs
24  are, therefore, entitled to restitution under the circumstances.

25     68.    Safeco-Liberty Mutual is under an obligation to pay Plaintiffs forthwith
26  all amounts by which Safeco-Liberty Mutual has been unjustly enriched.

27     69.    Plaintiffs justifiably relied on the expertise and skill of Safeco-Liberty
28  Mutual in order to fairly process and investigate his motor vehicle insurance claim.

1  Safeco-Liberty Mutual was aware at all times that Plaintiffs were relying on Safeco-
2  Liberty Mutual to provide true and correct information throughout the claim process.

3  <center>**PRAYER FOR RELIEF**</center>

4  Plaintiffs request that the Court enter judgment as follows:

5  <center>**First Cause of Action – Breach of Contract**</center>

6  70.    Damages under the Policy, plus interest, including prejudgment interest
7  and other economic and consequential damages, in an amount to be determined
8  according to proof at the time of trial;

9  71.    Costs of suit incurred herein; and

10  72.    Other relief as the Court deems just and proper.

11  <center>**Second Cause of Action - Breach of the Duty of Good Faith and Fair Dealing**</center>

12  73.    Damages for wrongful denial and failure to provide benefits under the
13  policy, plus interest, including prejudgment interest, in a sum to be determined at the
14  time of trial;

15  74.    Attorney's fees, witness fees and costs of litigation incurred by Plaintiffs
16  to obtain policy benefits in an amount to be determined at trial;

17  75.    Economic and consequential damages arising out of the Defendants'
18  unreasonable failure to provide benefits under the Policy;

19  76.    General damages for mental and emotional distress;

20  77.    Punitive and exemplary damages in an amount appropriate to punish or
21  set an example of Defendants;

22  78.    Costs of suit incurred herein; and

23  79.    Other relief as the Court deems just and proper.

24  <center>**Third Cause of Action—Unjust Enrichment**</center>

25  80.    Damages for the full amount of unjust enrichment by the Defendants,
26  plus pre-judgment interest on all damages;

27  81.    Costs of suit incurred herein; and

28  82.    Other relief as the Court deems just and proper.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Dated: January 11, 2024                    EVANGELINE FISHER GROSSMAN LAW

By: _____
EVANGELINE FISHER GROSSMAN
TONNA K. FAXON
Attorneys for Plaintiff

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: January 11, 2024                    EVANGELINE FISHER GROSSMAN LAW

By: _____
EVANGELINE FISHER GROSSMAN
TONNA K. FAXON
Attorneys for Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT A

# AFFIDAVIT

State of Indiana

County of Hamilton

NAME OF INSURED:    ZAREK DIETZ
                               KRISTIN DIETZ

POLICY NUMBER:      OA5100648

POLICY DATES:        NOV. 11 2022 TO NOV. 11 2023

Jodi Christian, archivist of

First National Insurance Company of America, has compared the attached

copies of the insurance policy number listed above and its endorsements

with the original records of the policy of insurance and endorsements

contained in the Company's files: we certify that the same is a true and

exact recital of all the provisions in the said original policy and

endorsements attached thereto.

*Jodi Christian*

Jodi Christian
Policy Copy Archivist

November 2, 2023

 **Safeco** Insurance™
A Liberty Mutual Company

GASPAR INSURANCE SERVICES
23161 VENTURA BLVD STE 100
WOODLAND HLS    CA   91364-1186

October 20, 2022

Policy Number:  OA5100648
24-Hour Claims:  1-800-332-3226
Policy Service:  (818) 302-3060
Online Account Services:  www.safeco.com

**THIS IS NOT A BILL.**

ZAREK DIETZ
KRISTIN DIETZ
5823 VESPER AVE
VAN NUYS CA  91411-3132

Welcome to Safeco!

We believe insurance shouldn't be any more complex than it has to be.   Welcome to an easier experience with Safeco.

Enclosed is your new Limited Property policy.   Read it through carefully.   It will give you a detailed description of the type and amount of your coverage, any deductibles (your out-of-pocket costs) that apply and the effective date of your policy.   If, after reading your policy, you have any questions or want to find out about discounts that may apply to your policy, please call (818) 302-3060.

The annual premium for your policy is $955.00.   We have asked your mortgage company to pay the premium from your escrow account.

For added convenience, visit www.safeco.com and make use of our automated services available to you including, but not limited to:

- Make a payment by online check, or credit card.
- Review your billing history.
- Change your billing due date.
- View your policy documents.
- Order a copy of your policy and/or insurance ID cards.
- Report to us a name change, or change of address.
- Review Safeco's Producer Compensation Disclosure.

For all other assistance please call your agent at (818) 302-3060.

Thank you for your business.   We look forward to serving you.

PLEASE SEE REVERSE
**FIRST NATIONAL INSURANCE COMPANY OF AMERICA (A SAFECO Company)**
P O BOX 704000, SALT LAKE CITY, UT 84170

OC-429/EP 10/13

Sincerely,

Tyler Asher
President, Safeco Insurance

CC 450/EP 5/98
31

## INFORMATION ABOUT YOUR POLICY

Please take some time to review important information about your policy.

The California Limited Property Policy you purchased helps protects your home by providing coverage for losses such as accidental discharge of water, falling objects, weight of ice and snow, and theft of personal property. Your Limited Property Policy includes base limits for Personal Liability and Medical Payments coverages. Increased limits for Personal Liability and Medical Payments coverage as well as other optional coverages are available. Please contact your Safeco agent for more information.

The California Limited Property Policy is a limited peril policy and does not cover your Dwelling, Other Structures or Personal Property in the event of loss due to fire, lightning, smoke, wind, hail, explosion, riot, aircraft, vehicles, vandalism or malicious mischief, earthquake and earth movement. Additional Living Expense is also not available unless a loss is covered under the policy.

The California Limited Property Policy requires you maintain a California Fair Plan policy or a policy where basic fire, extended coverage and vandalism or malicious mischief has been issued and continuously maintained. The California Fair Plan policy provides coverage for many of the perils not covered by the California Limited Property Policy identified above.

*The above summary is for information purposes only and does not provide coverage. Your Declarations in conjunction with your policy and other applicable endorsements, provides complete details of your coverages. If this summary conflicts with the applicable policy language, the policy language prevails.*

P-1118/CAEP 1/20

## IMPORTANT NOTICE — ADD A PARTY TO RECEIVE NOTICE

California law gives you the right to identify an additional person to receive a duplicate copy of any notice of lapse, termination, expiration, nonrenewal or cancellation we send to you due to non-payment of premium.

To assign a designee, simply complete the form below and mail the form to:

> Safeco Insurance Companies
> Personal Lines Underwriting
> PO Box 704000
> Salt Lake City, UT 84170-4000
> Email: documents@safeco.com
> Fax: 877-344-5107

You may also deliver the form to your independent Safeco agent. Agent contact information is shown on your policy Declarations.

Please keep a copy of the completed form for your records. You may also change or terminate the third party designee by sending us written notification or completing the relevant section below.

**Request to Designate a Third Party to Receive a Copy of Policy Termination Notices for Non-Payment of Premium.**

Insured Name _____    Policy Number(s)* _____

Address _____    _____

_____    _____

*List all applicable policy numbers.

I designate the following person to receive a duplicate copy of any notice of lapse, termination, expiration, nonrenewal or cancellation that you send me due to non-payment of premium for the policy number shown above.

I understand the third party designee does not have any right, whether as an additional insured or otherwise, to any benefits under the policy other than the right to receive the notice of lapse, termination, expiration, nonrenewal, or cancellation for nonpayment of premium.

Designee Name _____

Street _____    City _____    State _____    Zip _____

_____    _____
Signature of Insured    Date

**Request to Change a Third Party to Receive a Copy of Policy Termination Notices for Non-Payment of Premium.**

Insured
Name _____

Policy
Number(s)*_____

Address _____

_____

_____

_____

_____

*List all applicable policy numbers.

I would like to replace my prior third party designee with the following person to receive a duplicate copy of any notice of lapse, termination, expiration, nonrenewal or cancellation that you send me due to non-payment of premium for the policy number shown above.

I understand the third party designee does not have any right, whether as an additional insured or otherwise, to any benefits under the policy other than the right to receive the notice of lapse, termination, expiration, nonrenewal, or cancellation for nonpayment of premium.

Designee Name _____

Street _____ City _____ State _____ Zip _____

_____

Signature of Insured

_____

Date

**Request to Delete a Third Party from Receiving a Copy of Policy Termination Notices for Non-Payment of Premium.**

Insured
Name _____

Policy
Number(s)*_____

Address _____

_____

_____

_____

_____

*List all applicable policy numbers.

I would like to delete my previously selected third party designee from receiving a duplicate copy of any notice of lapse, termination, expiration, nonrenewal or cancellation that you send me due to nonpayment of premium for the policy number shown above.

Designee Name _____

Street _____ City _____ State _____ Zip _____

_____

Signature of Insured

_____

Date

## CALIFORNIA DEPARTMENT OF INSURANCE
COMMUNITY SERVICES STATEMENT

FIRST NATIONAL INSURANCE COMPANY OF AMERICA

**NOTICE TO POLICYHOLDER(S):**

California Department of Insurance Regulations Section 2646.6 requires all Insurance Companies to request information as to the race or national origin and gender of each policyholder. The Regulation calls for this information to be provided voluntarily by each policyholder. This information will be reported to the California Department of Insurance.

The California Department of Insurance requests that you provide this following information in order to monitor the Company's compliance with the law. You are not required to provide this information, but are encouraged to do so. The Company will not use this information you provide here for underwriting or rating purposes. If you have any questions about this request, you may call the California Department of Insurance Consumer Hotline at (800) 927-HELP.

Policy Type:            Homeowners

Policy Number:

Policyholder Name(s):

Policyholder Address:

Please check the Race or National Origin as it applies to you, the policyholder(s). For the purpose of completing this form, the policyholder is defined as: An individual, spouse, domestic partner, or business partner(s) named on the policy.

| Race / National Origin | Policyholder | | | Co-Policyholder | | |
|---|---|---|---|---|---|---|
| | Male / Female / Non-Binary | | | Male / Female / Non-Binary | | |
| African-American | —— | —— | —— | —— | —— | —— |
| American Indian or Alaskan Native | —— | —— | —— | —— | —— | —— |
| Asian / Pacific Islander | —— | —— | —— | —— | —— | —— |
| Latino | —— | —— | —— | —— | —— | —— |
| White | —— | —— | —— | —— | —— | —— |
| Other | —— | —— | —— | —— | —— | —— |

**MAILING INSTRUCTIONS:** Please fold this form in half as indicated, tape top and bottom edges together. Affix proper U.S. postage and place in mail. DO NOT SEND THIS FORM WITH YOUR PAYMENT OR WITH ANY OTHER CORRESPONDENCE REGARDING YOUR POLICY.

CN-0009/CAEP 12/19                                                                 Page 1 of 2

COMMUNITY SERVICE STATEMENT
COLLECTION POINT
PO Box 958416
Lake Mary, FL 32795

THE POST
OFFICE WILL
NOT DELIVER
MAIL WITHOUT
POSTAGE

I9    00519        79 I
**COMMUNITY SERVICE STATEMENT COLLECTION POINT**
**PO Box 958416**
**Lake Mary, FL 32795**

...........................................................................................
FOLD

8764X

CN-0009/CAEP 12/19                                                    Page 2 of 2

**Safeco** Insurance™
A Liberty Mutual Company

## CALIFORNIA RESIDENTIAL PROPERTY INSURANCE DISCLOSURE

**AGENT:**
GASPAR INSURANCE SERVICES
23161 VENTURA BLVD STE 100
WOODLAND HLS    CA    91364-1186

**DATE:**
OCTOBER 20, 2022

**AGENT TELEPHONE: (818) 302-3060**

**POLICY NUMBER:**
OA5100648

**INSURED:**
ZAREK DIETZ
KRISTIN DIETZ
5823 VESPER AVE
VAN NUYS CA    91411-3132

**RESIDENCE PREMISES:**
53703 OAK
BASS LAKE CA    93604

### NOTICE TO CONSUMERS — CALIFORNIA RESIDENTIAL INSURANCE DISCLOSURE

This disclosure is required by Section 10102 of the California Insurance Code. This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

### PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE

> You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.

☐ **ACTUAL CASH VALUE COVERAGE** for either a total or partial loss to the structure or its contents pay the amount it would cost you to repair, rebuild, or replace the thing lost or injured, less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less. A deduction for physical depreciation applies only to components of a structure that are normally subject to repair and replacement during the useful life of that structure.

☐ **REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Coverage only pays for replacement costs up to the limits specified in your policy.

☒ **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

☐ **GUARANTEED REPLACEMENT COST COVERAGE** covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy declarations page. (NOT AVAILABLE).

☒ **BUILDING CODE UPGRADE COVERAGE**, also called Ordinance and Law coverage, covers additional cost to repair or replace a dwelling to comply with the building codes and zoning laws in effect at the time of loss or rebuilding. These costs may otherwise be excluded by your policy. Meeting current building code requirements can add significant costs to rebuilding your home. Refer to your policy or endorsement for the specific coverage provided and coverage limits that apply.

DC-4497/CAEP 4/21

Page 1 of 3



**READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY:** The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide the details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. The amount of any claim payment made to you will be reduced by any applicable deductibles shown on your policy declarations page. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.

### INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE

**AVOID BEING UNDERINSURED:** Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

**THE RESIDENTIAL DWELLING COVERAGE LIMIT:** The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is completely destroyed. Please note:

- The cost to rebuild your home is almost always different from the market value.

- Dwelling coverage limits do not cover the value of your land.

- The estimate to rebuild your home should be based on construction costs in your area and should be adjusted to account for the features of your home. These features include but are not limited to the square footage, type of foundation, number of stories, and the quality of the materials used for items such as flooring, countertops, windows, cabinetry, lighting and plumbing.

- The cost to rebuild your home should be adjusted each year to account for inflation.

- Coverage limits for contents, separate structures, additional living expenses and debris removal are usually based on a percentage of the limit for the dwelling. If your dwelling limit is too low, these coverage limits may also be too low.

You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. If you do obtain an estimate of replacement value, and wish to change your policy limits, contact your insurance company. While not a guarantee, a current estimate can help protect you against being underinsured.

**DEMAND SURGE:** After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

**CHANGES TO PROPERTY:** Changes to your property may increase its replacement cost. These changes may include the building of additions, customizing your kitchen or bathrooms, or otherwise remodeling your home. Failure to advise your insurance company of any significant changes to your property may result in your home being underinsured.

**EXCLUSIONS:** Not all causes of damage are covered by common homeowners or residential fire policies. You need to read your policy to see what causes of loss or perils are not covered. Coverage for landslide is typically excluded. Some excluded perils such as earthquake or flood can be purchased as an endorsement to your policy or as a separate policy. Contact your agent, broker, or insurance company if you have a concern about any of the exclusions in your policy.

### CONTENTS (PERSONAL PROPERTY) COVERAGE DISCLOSURE:

This disclosure form does not explain the types of contents coverage provided by your policy for items such as your furniture or clothing. Contents may be covered on either an actual cash value or replacement cost basis depending on the contract. Almost all policies include specific dollar limitations on certain property that is particularly valuable such as jewelry, art, or silverware. Contact your agent, broker or insurance company if you have any questions about your contents coverage. You should create a list of all personal property in and around your home. Pictures and video recordings also help you document your property. The list, photos, and video should be stored away from your home.

### CONSUMER ASSISTANCE

If you have any concerns or questions, contact your agent, broker, or insurance company. You are also encouraged to contact the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

## ACKNOWLEDGEMENT OF CALIFORNIA RESIDENTIAL PROPERTY INSURANCE DISCLOSURE

***PLEASE SIGN THIS FORM AND MAIL IT TO THE ADDRESS PRINTED BELOW WITHIN 60 DAYS.***

I have read and understood the attached California Residential Property Insurance Disclosure, which describes the principal forms of insurance coverage in California for residential dwellings and identifies the form of dwelling coverage I have purchased.

**Policy No.:**  OA5100648



**Date:** _____

**Signature:** _____



Please sign this form and mail it to:

Safeco Imaging Center
P.O. Box 704000
Salt Lake City, UT 84170-4000



0000072DEBDEV030712341766

6786

DC-4497/CAEP 4/21

Page 3 of 3

## CALIFORNIA RESIDENTIAL PROPERTY INSURANCE BILL OF RIGHTS

A consumer is entitled to receive information regarding homeowner's insurance. The following is a limited overview of information that your insurance company can provide:

- The insurance company's customer service telephone number for underwriting, rating, and claims inquiries.

- A written explanation for any cancellation or nonrenewal of your policy.

- A copy of the insurance policy.

- An explanation of how your policy limits were established.

- In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.

- In the event of a claim, a copy of the Unfair Practices Act and, if requested, a copy of the Fair Claims Practices Regulations.

- In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.

- An offer of coverage and premium quote for earthquake coverage, if eligible.

A consumer is also entitled to select a licensed contractor or vendor to repair, replace, or rebuild damaged property covered by the insurance policy.

The information provided herein is not all inclusive and does not negate or preempt existing California law. If you have any concerns or questions, contact your agent, broker, insurance company, or the California Department of Insurance consumer information line (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

This insurer reports claim information to one or more claims information databases. The claim information is used to furnish loss history reports to insurers. If you are interested in obtaining a report from a claims information database, you may do so by contacting:

Choicepoint (CLUE)
1-800-456-6004
www.consumerdisclosure.com

ISO Claimsearch
1-800-888-4476

CN-2121/CAEP 1/12


**Safeco** Insurance
A Liberty Mutual Company

### Safeco Insurance Privacy Notice — California
Effective December 11, 2020

Safeco Insurance, its affiliates and subsidiaries (collectively "Safeco" or "we", "us" and "our") provide insurance to individuals. We strive to protect your privacy. This notice applies to you if you are a **California resident** and are contacting us to learn about our products, to buy insurance for yourself (for example, auto insurance), or if you are filing a claim against a policy. In this notice, we explain how we gather, use, share, and protect your data.

**What Personal Data Do We Collect?**

The types of personal data we gather and share depends on both the product and your relationship to us. For example, we may gather different data if you are a claimant reporting an injury than if you want a quote for auto insurance. The data we gather can include your social security number, income, transaction data such as account balances and payment history, and data from consumer reports. It may also include data gathered in connection with our provision of insurance services, when you apply for such services, or resulting from other contacts with you. It may also include:

- **Identifiers**, including a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, or other similar identifiers;
- **Personal data**, such as your name, signature, Social Security number, physical characteristics or description, address, telephone number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, financial data, medical data, or health insurance data;
- **Protected classification characteristics described in California Civil Code § 1798.80(e)**, including age, race, color, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, veteran or military status;
- **Commercial data**, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories and tendencies;
- **Internet or other similar network activity**, including browsing history, search history, data on a consumer's interaction with a website, application, or advertisement;
- **Professional or employment related data**, including current or past job history or performance evaluations;
- **Inferences drawn from other personal data**, such as a profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes;
- **Risk data**, including data about your driving and/or accident history; this may include data from consumer reporting agencies, such as your motor vehicle records and loss history data, health data, or criminal convictions;
- **Claims data**, including data about your previous and current claims, which may include data regarding your health, criminal convictions, third party reports, or other personal data.

For information about the types of personal data we have gathered in the past twelve months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

**How Do You Gather my Data?**

| We gather your personal data **directly from you**. For example, you provide us with data when you: | We also gather your personal data **from other people**. For example: |
|---|---|
| • ask about, buy insurance or file a claim | • your insurance agent or broker |
| • pay your policy | • your employer, association or business (if you are insured through them) |
| • visit our websites, call us, or visit our office | • our affiliates or other insurance companies about your transactions with them |

Version 2.0 (last updated December 11, 2020)

CN-2/CAEP 12/20

1

| | |
|---|---|
| | • consumer reporting agencies, Motor Vehicle Departments, and inspection services, to gather your credit history, driving record, claims history, or value and condition of your property |
| | • other public directories and sources |
| | • third parties, including other insurers, brokers and insurance support organizations who you have communicated with about your policy or claim, anti-fraud databases, sanctions lists, court judgments and other databases, government entities, open electoral register, advertising networks, data analytics providers, social networks, data brokers, or in the event of a claim, third parties including other parties to the claim, witnesses, experts, loss adjustors, and claim handlers |
| | • other third parties who take out a policy with us and are required to provide your data such as when you are named as a beneficiary or where a family member has taken out a policy which requires your personal data |

Organizations that share data with us may keep it and share it to others as permitted by law. For data about how we have gathered personal data in the past twelve months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

**How Do We Use Your Personal Data?**

Safeco uses your data to provide you our products and services and as otherwise provided in this notice. We may use your data and the data of our former customers for our business purposes. Our business purposes include:

| Business Purpose | Data Categories |
|---|---|
| **Market, sell and provide insurance.**<br>This includes for example:<br>• calculating your premium;<br>• determining your eligibility for a quote;<br>• confirming your identity and service your policy; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Manage your claim.**<br>This includes for example:<br>• managing your claim, if any;<br>• conducting claims investigations;<br>• conducting medical examinations;<br>• conducting inspections, appraisals;<br>• providing roadside assistance;<br>• providing rental car replacement, or repairs; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |

| | |
|---|---|
| **Day to Day Business and Insurance Operations.**<br>This includes, for example:<br>• creating, maintaining, customizing and securing accounts;<br>• supporting day-to-day business and insurance related functions;<br>• doing internal research for technology development;<br>• marketing and creating products and services;<br>• conducting audits related to a current contact with a consumer and other transactions;<br>• as described at or before the point of gathering personal data or with your authorization; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Security and Fraud Detection.**<br>This includes for example:<br>• detecting security issues;<br>• protecting against fraud or illegal activity, and to comply with regulatory and law enforcement authorities;<br>• managing risk and securing our systems, assets, infrastructure and premises; roadside assistance, rental car replacement, or repairs;<br>• help to ensure the safety and security of Safeco staff, assets and resources, which may include physical and virtual access controls and access rights management;<br>• supervisory controls and other monitoring and reviews, as permitted by law; and emergency and business continuity management; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Regulatory and Legal Requirements.**<br>This includes for example:<br>• controls and access rights management;<br>• to evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of Safeco's assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal data held by Safeco is among the assets transferred;<br>• exercising and defending our legal rights and positions;<br>• to meet Safeco contract obligations;<br>• to respond to law enforcement requests and as required by applicable law, court order, or governmental regulations;<br>• as otherwise permitted by law | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Improve Your Customer Experience and Our Products.**<br>This includes for example:<br>• improve your customer experience, our products and service;<br>• to provide, support, personalize and develop our website, products and services;<br>• create and offer new products and services; | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |

| | |
|---|---|
| **Analytics to identify, understand and manage our risks and products.**<br>This includes for example:<br>• conducting analytics to better identify, understand and manage risk and our products; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Customer service and technical support:**<br>• answer questions and provide notifications;<br>• provide customer and technical support. | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |

**Do We Share Your Personal Data?**

Safeco does not sell your personal data as defined by California law.

Safeco may share personal data with affiliated and non-affiliated third parties, including:

- Liberty Mutual affiliates;
- Service Providers (such as auto repair facilities, towing companies, property inspectors, and independent adjusters);
- Insurance support organizations;
- Brokers and agents;
- Government entities (e.g. regulatory, quasi-regulatory, tax or other authorities, law enforcement agencies, courts, arbitrational bodies, and fraud prevention agencies);
- Consumer reporting agencies;
- Advisors including law firms, accountants, auditors, and tax advisors;
- Insurers, re-insurers, policy holders, and claimants;
- Group policyholders (for reporting claims data or an audit);
- Advertising networks, data analytics providers, and social networks;
- Service providers and affiliates for actuarial or research studies; and
- As permitted by law.

We may also share data with other companies that provide marketing services on our behalf or as part of a joint marketing agreement for products offered by Safeco. We will not share your personal data with others for their own marketing purposes.

We may also share data about our transactions (such as payment history) and experiences (such as claims made) with you to our affiliates.

Safeco may share the following categories of personal data as needed for business purposes:

| | |
|---|---|
| Identifiers | Personal Data |
| Protected Classification Characteristics | Commercial Data |
| Internet of other similar network activity | Professional, employment and education data |
| Inferences drawn from personal data | Risk Data |
| Claims Data | |

For information about how we have shared personal data in the past twelve months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

**Your Agent or Broker**

Your agent or broker is not a Safeco employee and is not subject to our privacy policy. Because your agent or broker works with you directly, he or she may have data about you that Safeco does not have. Your agent or broker may use this data differently than Safeco. Contact your agent or broker to learn more about their privacy practices.

**How Do We Keep your Personal Data Safe?**

We maintain physical, electronic, and administrative safeguards created to protect your data from unauthorized access. Our employees are authorized to access your data only for legitimate business purposes.

**What Rights Do I Have to Learn More About My Personal Data?**

You may have rights under California laws to learn more about our privacy practices.

For example, under the California Insurance Code you may request a copy of certain information about you to review its completeness and accuracy. You must make this request in writing by contacting us as indicated below. We have 30 business days after receiving your request to send the data to you.

To the extent required by law, we will also tell you of any persons to whom we have shared the data in the last two years. We will also share the name and address of any consumer reporting agency from which we have received information about you. Some data we are not required to share.

If you believe the data we have about you is incorrect, you may notify us in writing of what you would like to correct and why. We will respond within 30 business days.

If we agree, we will change our records. We will send the change to any organization that has received the inaccurate information from us. It will also be included in any later disclosures to others.

If we disagree, we will tell you why. You can write us with a short statement explaining why you believe that the data is incorrect. This will become part of the file. We will also send it to any persons that have received the disputed information from us. It will also be included in any later disclosures to others.

You may have additional rights under other California laws. For more information about these rights, please go to libertymutual.com/privacy and click on the link California Supplemental Privacy Notice. If you cannot access the link, please contact us.

**How to Contact Us:**

You can submit requests, seek additional information, or obtain a copy of our privacy notice in an alternative format by either:

|         |                                                            |
|---------|------------------------------------------------------------|
| Calling: | 800-344-0197                                              |
| Email:   | Privacy@libertymutual.com                                 |
| Online:  | libertymutualgroup.com/privacy-policy/data-request        |
| Mail:    | Liberty Mutual Insurance Company                          |
|          | 175 Berkeley St., 6th Floor                               |
|          | Boston, MA 02116                                          |
|          | Attn: Privacy Office                                     |

**Who Is Providing this Notice?**

This Privacy Notice is provided on behalf of the following Safeco companies and affiliates:

American Economy Insurance Company, American States Insurance Company, American States Insurance Company of Texas, American States Lloyds Insurance Company, American States Preferred Insurance Company, First National Insurance Company of America, General Insurance Company of America, Insurance Company of Illinois, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco Insurance Company of Indiana, Safeco Insurance Company of Oregon, Safeco Lloyds Insurance Company, Safeco National Insurance Company, Safeco Surplus Lines Insurance Company.

Version 2.0 (last updated December 11, 2020)

5

CN-2/CAEP 12/20

**Safeco Insurance™**
A Liberty Mutual Company

**POLICY NUMBER:** 0A5100648

## LIMITED PROPERTY POLICY DECLARATIONS

**INSURED:**
ZAREK DIETZ
KRISTIN DIETZ
5823 VESPER AVE
VAN NUYS CA  91411-3132

**RESIDENCE PREMISES:**
53703 OAK
BASS LAKE CA  93604

**POLICY PERIOD FROM:** NOV. 11 2022
**AT:** 12:01 A.M.
**TO:** NOV. 11 2023

**AGENT:**
GASPAR INSURANCE SERVICES
23161 VENTURA BLVD STE 100
WOODLAND HLS    CA    91364-1186

**TELEPHONE:** (818) 302-3060



### IMPORTANT NOTICES

- Your new policy is effective November 11, 2022.
- **THIS POLICY DOES NOT COVER THE PERIL OF FIRE. THERE ARE OTHER RESOURCES FOR FIND-
  ING FIRE COVERAGE, INCLUDING USING THE CALIFORNIA DEPARTMENT OF INSURANCE'S HOME
  INSURANCE FINDER OR PURCHASING COVERAGE FROM THE CALIFORNIA FAIR PLAN ASSOCIATION.**
- **THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE.**
- The limit of liability for this structure (Coverage A) is based on an estimate of
  the cost to rebuild your home, including an approximate cost for labor and
  materials in your area, and specific information that you have provided about your
  home.

| COVERAGES | LIMIT | PREMIUM |
|---|---|---|
| PART A - PROPERTY COVERAGES | | |
| I   - Dwelling | $    475,982 | $    825.00 |
| II  - Other Structures | 48,000 | 1.00 |
| III - Personal Property | 143,000 | -63.00 |
| IV  - Loss of Use | 24 MONTHS | |
| | | |
| PART B - LIABILITY COVERAGES | | |
| V   - Personal Liability (each occurrence) | 500,000 | 62.00 |
| VI  - Medical Payments (each person) | 10,000 | |
| INCLUDED COVERAGES | | |
| Full Value Contents | | Included |
| Extended Dwelling Coverage Amount | 237,991 | Included |
| 438-B.F.U. | | Included |
| California Workers Compensation | | Included |
| Building Ordinance or Law Coverage ( 10%) | 47,598 | Included |

| OPTIONS | LIMIT | PREMIUM |
|---|---|---|
| Option FFF - Loss Assessment | $    10,000 | $    10.00 |
| Option VV - Theft of Building Materials | | 120.00 |

| DEDUCTIBLE(S) | PERCENTAGE | AMOUNT |
|---|---|---|
| Part A | N/A | $    5,000 |

| TOTAL ANNUAL PREMIUM | $    955.00 |
|---|---|

877: 13007720EBDEV03071234177

**Safeco** Insurance.
A Liberty Mutual Company

POLICY NUMBER:  OA5100648

## LIMITED PROPERTY POLICY DECLARATIONS

### CONTINUED

You may pay your premium in full or in installments. There is no installment fee for the following billing plans: Full Pay, Annual 2-Pay. Installment fees for all other billing plans are listed below. If more than one policy is billed on the installment bill, only the highest fee is charged. The fee is:
   $0.00 per installment for recurring automatic deduction (EFT)
   $0.00 per installment for recurring credit card or debit card
   $2.00 per installment for all other payment methods

### INSURABLE INTERESTS

SERVICING MORTGAGEE
   ROYAL PACIFIC FUNDING CORP
   ITS SUCCESSORS AND/OR ASSIGNS
   PO BOX 961292
   FORT WORTH TX  76161-0292
   LOAN NUMBER:  1474857669

### POLICY FORMS APPLICABLE TO THIS POLICY:

DC-4900/CAEP 2/21, DC-4933/CAEP 2/21, DC-4717/CAEP 4/21, DC-4703/CAEP 6/99, DC-4715/CAEP 6/99

Policy underwritten by FIRST NATIONAL INSURANCE COMPANY OF AMERICA
                      (a stock insurance company).
Administrative office:  175 Berkeley St., Boston, MA 02116

Mailing Address:  PO Box 704000, Salt Lake City, UT 84170-4000

## IF YOU HAVE A PROBLEM

The California Department of Insurance maintains a Consumer Affairs Division to investigate consumer complaints at:

**California Department of Insurance**
**Consumer Affairs Division**
**300 South Spring Street**
**Los Angeles, California 90013**
**www.insurance.ca.gov**
**Telephone (Toll Free): 1-(800)-927-HELP**
                                  **(4357)**

The Department requests that you should only contact the Department of Insurance after contacts with the insurance company or its agent or other representative have failed to produce a satisfactory solution to your problem.

**GASPAR INSURANCE SERVICES**
**23161 VENTURA BLVD STE 100**
**WOODLAND HLS    CA   91364-1186**

**TELEPHONE:  (818) 302-3060**



P-3221/CAEP 7/20 _____





A Liberty Mutual Company

## CALIFORNIA LIMITED PROPERTY POLICY
## SUPPLEMENT TO BASIC FIRE POLICY
### FIRST NATIONAL INSURANCE COMPANY OF AMERICA

### Table of Contents

| | | Beginning On Page |
|---|---|---|
| | INSURING AGREEMENT | 1 |
| PART A PROPERTY COVERAGES | COVERAGE I — DWELLING | 1 |
| | COVERAGE II — OTHER STRUCTURES | |
| | Building Property We Cover | |
| | Building Property We Do Not Cover | |
| | Building Property Losses We Cover | |
| | Building Property Losses We Do Not Cover | |
| | COVERAGE III — PERSONAL PROPERTY | |
| | Personal Property We Cover | |
| | Personal Property We Do Not Cover | |
| | Personal Property Losses We Cover | |
| | Personal Property Losses We Do Not Cover | |
| | COVERAGE IV — LOSS OF USE | |
| | ADDITIONAL PROPERTY COVERAGES | |
| | PROPERTY CONDITIONS | |
| PART B LIABILITY COVERAGES | COVERAGE V & VI — PERSONAL LIABILITY AND MEDICAL PAYMENTS | 11 |
| | Liability Losses We Cover | |
| | Liability Losses We Do Not Cover | |
| | ADDITIONAL LIABILITY COVERAGES | 16 |
| | LIABILITY CONDITIONS | |
| PART A AND PART B | PROPERTY AND LIABILITY CONDITIONS | 17 |
| | POLICY DEFINITIONS | 18 |
| MANDATORY COVERAGE | OPTION EEE — Workers Compensation (Residence Employee Mandatory Coverage — California Only) | 21 |



DC-4933/CAEP 2/21

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

## PART A — PROPERTY COVERAGES

### BUILDING PROPERTY WE COVER

#### COVERAGE I — DWELLING

We cover:

1. the dwelling on the *residence premises* shown in the Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways; and

2. materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

#### COVERAGE II — OTHER STRUCTURES

We cover:

1. fences, driveways and walkways; and

2. other structures on the *residence premises,* separated from the dwelling by clear space. This includes retaining walls, driveways, walkways, and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

### BUILDING PROPERTY WE DO NOT COVER

1. Land, no matter where it is located, including land on which the dwelling is located, except as noted in **Additional Property Coverages,** Land Stabilization.

2. Other structures:

   a. used in whole or in part for *business* purposes; or

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

### BUILDING PROPERTY LOSSES WE COVER

We insure for all accidental direct physical loss to property described in Coverages I and II except:

1. losses excluded under **Part A — Building Property Losses We Do Not Cover;**

2. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

   a. maintain heat in the building; or

   b. shut off the water supply and drain the system and appliances of water;

3. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

4. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

5. breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

DC-4933/CAEP 2/21                                    - 1 -

6. loss caused by:

   a. wear and tear, marring, deterioration;

   b. inherent vice, latent defect, mechanical breakdown;

   c. smog, rust, mold, wet or dry rot;

   d. smoke from agricultural smudging or industrial operations;

   e. the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants* at any time;

   f. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs or chimneys;

   g. birds, vermin, rodents, insects or domestic animals, except breakage of glass;

   h. pressure from or presence of tree or plant roots.

If any of these cause water to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escaped.

Under items **2.** through **6.**, any ensuing loss not excluded is covered.

## BUILDING PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss:

1. **Fire or Lightning.**

2. **Windstorm or hail.**

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

8. **Vandalism or malicious mischief.**

9. continuous or repeated seepage or leakage of water or steam from a:

   a. heating, air conditioning, automatic fire protective sprinkler system or landscape sprinkler system;

   b. household appliance; or

   c. plumbing system, including from, within or around any shower stall, shower bath, tub installation or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of weeks, months or years. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

10. **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow.

We do cover direct loss by theft.

11. **Water Damage,** meaning:

   a. flood, surface water, waves, tidal water, tsunami, overflow of a body of water, or spray from any of these, whether or not driven by wind;

    **b.**  water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

    **c.**  water which backs up through sewers or drains originating outside of the *residence premises'* plumbing system; or

    **d.**  water which backs up, overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

Direct loss by theft resulting from water damage is covered.

**12. Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the *residence premises.* If any **Building Property Losses We Cover** ensues on the *residence premises,* we will pay only for the ensuing loss.

**13. Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

**14.** Loss caused directly or indirectly by War, including the following and any consequence of any of the following:

    **a.**  undeclared war, civil war, insurrection, rebellion, or revolution;

    **b.**  warlike act by a military force or military personnel; or

    **c.**  destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**15. Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Part **A** except direct loss by fire resulting from the nuclear hazard is covered.

**16. Intentional Loss,** meaning any loss arising out of any act committed:

    **a.**  by or at the direction of any *insured;*

    **b.**  with the intent to cause a loss.

**17.** Acts or Decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**18.** Weather that contributes in any way with a cause or event excluded in this section to produce a loss. However, any ensuing loss not excluded is covered.

**19. Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

    **a.**  planning, zoning, development, surveying, siting;

    **b.**  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **c.**  materials used in repair, construction, renovation or remodeling; or

    **d.**  maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

---

## PERSONAL PROPERTY WE COVER

### COVERAGE III — PERSONAL PROPERTY

**1.** Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises,* coverage is limited to 10% of the Coverage III limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

During the time the *residence premises* is under construction by or for the *insured,* our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage III. Our total limit shall not exceed the policy limit for Coverage III in any one loss.

2.  At your request we cover:

    a.  personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *insured;*

    b.  personal property owned by a guest or a *residence employee,* while the property is at any residence occupied by any *insured.*

3.  We cover:

    a.  motorized land vehicles not subject to motor vehicle registration or licensed for road use and used solely to service the *residence premises;*

    b.  disassembled parts of a motorized land vehicle while located on the *residence premises;*

    c.  golf carts;

    d.  vehicles designed for the handicapped and not licensed for road use; and

    e.  devices or instruments for the transmitting, recording, receiving or reproduction of sound or pictures, which are not permanently installed in a motorized land vehicle.

4.  The following groups of personal property are covered only up to the special limit shown. The special limit is the total amount available for that group for any one loss and does not increase the Coverage III limit. The loss of, or to, more than one item in a group arising from the same cause or event is considered one loss.

    a.  $250 on money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

    b.  $3,000 on rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

    c.  $1,500 on securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

        This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

        This limit includes the cost to research, replace or restore the material from the lost or damaged medium.

    d.  $1,500 on watercraft, including their trailers, furnishings, equipment and outboard motors.

    e.  $1,500 on trailers not used with watercraft.

    f.  $1,500 on any one article, but not more than $3,000 in the aggregate for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

    g.  $3,000 for loss by theft of silverware, silver-plated ware, goldware, gold-platedware and pewterware.

        Silverware, goldware and pewterware include:

        (1)  plateware, flatware, hollowware, tea sets, trays, trophies and the like;

        (2)  other utilitarian items made of or including silver or gold; and

        (3)  all items of pewterware.

    h.  $5,000 on *business* property, not excluded elsewhere, while located on the *residence premises.*

    i.  $1,000 on *business* property, not excluded elsewhere, while located away from the *residence premises.*

    j.  $200 on tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the *residence premises.*

    k.  $5,000 on any one article, but not more than $10,000 in the aggregate, for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

    l.  $2,000 on grave markers.

**PERSONAL PROPERTY WE DO NOT COVER**

1. Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

2. Animals, birds or fish.

3. Motorized land vehicles subject to motor vehicle registration or licensed for road use, including their equipment and accessories while in or upon the vehicle.

4. Any device or instrument, including any accessories or antennas, for the transmitting, recording, receiving or reproduction of sound or pictures which are permanently installed in a motor vehicle.

5. Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

6. Property of roomers, boarders, residents and other tenants not related to any *insured.*

7. Property in a location regularly rented or held for rental to others by any *insured;* but this exclusion does not apply to property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises.*

8. Property, away from the *residence premises,* rented or held for rental to others.

9. *Business* property or merchandise:

    a. in storage;

    b. held as a sample; or

    c. held for sale or delivery after sale.

10. *Business* documents, records or data regardless of the medium on which they exist.

    However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

**PERSONAL PROPERTY LOSSES WE COVER**

We cover accidental direct physical loss to property described in Coverage III — Personal Property caused by a peril listed below except as limited or excluded.

1. **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. committed by any *insured* or by any other person regularly residing on the *insured location;*

   b. in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   c. from that part of a *residence premises* rented by any *insured* to other than an *insured.*

   This peril does not include loss caused by theft that occurs away from the *residence premises* of property while at any other residence owned, rented to, or occupied by any *insured,* except while an *insured* is temporarily residing there.

   Property of a student who is an *insured* is covered while at a residence away from home.

2. **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

3. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

4. **Collapse of a building or any part of a building.**

   This peril does not include settling, cracking, shrinking, bulging or expansion.

5. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

   This peril does not include loss:

   a. to the appliance or system from which the water or steam escaped;

    **b.**   caused by or resulting from freezing except as provided in the peril of freezing below; or

    **c.**   on the *residence premises* caused by accidental discharge or overflow which occurs off the *residence premises.*

**6.**   **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

**7.**   **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

    This peril does not include loss on the *residence premises* while the dwelling is unoccupied, unless you have used reasonable care to:

    **a.**   maintain heat in the building; or

    **b.**   shut off the water supply and drain the system and appliances of water.

**8.**   **Sudden and accidental damage from artificially generated electrical current.**

**9.**   **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises.* There is no coverage if breakage of glass is caused by *earthquake.* There is no coverage for loss or damage to the glass.

---

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

---

## COVERAGE IV — LOSS OF USE

**1.**   If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning any necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

    Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, but not to exceed 24 months.

**2.**   If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover:

    **Fair Rental Value,** meaning the **fair rental value** of that part of the *residence premises* you rent to others or hold for rental, less any expenses that do not continue while the premises is uninhabitable.

    Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

**3.**   If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a loss we cover in this policy we cover the **Additional Living Expense** as provided under **1.** or **Fair Rental Value** as provided under **2.** above for no more than two weeks during which use is prohibited.

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

---

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

**1.**   **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage

to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the *residence premises,* provided the trees damage **Building Property We Cover.** The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2.  **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the *residence premises,* for loss caused by Theft.

    We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for *business* purposes.

3.  **Reasonable Repairs.** We will pay up to $5,000 for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

4.  **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

5.  **Land Stabilization.** We will pay up to $5,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss.

    This is an additional amount of insurance.

6.  **Building Ordinance or Law Coverage.** Damage to building or personal property we cover caused by a Building or Personal Property Loss We Cover will be settled on the basis of any ordinance or law that regulates the construction, repair or demolition of this property.

    This coverage does not apply:

    a.  to loss caused by the peril of *earthquake.*

    b.  to loss to any undamaged portion of the building or personal property we cover.

    c.  unless you choose to repair or rebuild your home at its present location.

    We do not cover:

    a.  the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    b.  the costs to comply with any ordinance which requires any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants.*

    This is not an additional amount of insurance.

## PART A — PROPERTY CONDITIONS

1.  **Deductible.** In case of loss under **Part A** — Property Coverages of this policy, we cover only that part of the loss over the applicable deductible stated in the Declarations.

    The deductible does not apply to Coverage **IV** — Loss Of Use.

2.  **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling and personal property. To simplify your responsibility of keeping your dwelling and personal property insured to value during fluctuating economic conditions, we will suggest annual changes, either up or down, of your policy limits. This suggestion will be made on the renewal date of your policy, applied pro rata during the policy period, and will be based upon average factors for your area supplied to us by recognized appraisal agencies. Your home may not be average.

    You will be notified in advance of the new amount of coverage. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

3.  **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

    a.  cooperate with us in the investigation, settlement or defense of any claim or suit;

    **b.**   give immediate notice to us or our agent;

    **c.**   notify the police in case of loss by theft;

    **d.**   protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

    **e.**   prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *replacement cost* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

    **f.**   as often as we reasonably require:

       **(1)**  exhibit the damaged and undamaged property;

       **(2)**  provide us with records and documents we request and permit us to make copies; and

       **(3)**  submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other *insured.* You shall not interfere with us examining any other *insured.*

    **g.**   submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

       **(1)**  the time and cause of loss;

       **(2)**  interest of the *insured* and all others in the property involved and all encumbrances on the property;

       **(3)**  other insurance which may cover the loss;

       **(4)**  changes in title or occupancy of the property during the term of the policy;

       **(5)**  specifications of any damaged building and detailed repair estimates;

       **(6)**  an inventory of damaged personal property described in **3.e.**;

       **(7)**  receipts for **Additional Living Expenses** incurred or records supporting the **Fair Rental Value** loss.

**4.**  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    **a.**   to the *insured* for more than the amount of the *insured's* interest at the time of loss; or

    **b.**   for more than the applicable limit of liability;

    whichever is less.

    Deductibles on shared ownership fences and walls will be applied on the same pro rata basis as is represented by the insurable interest in the fence or wall.

**5.**  **Loss Settlement.** Covered property losses are settled as follows:

    **a.**   *Replacement Cost.* Property under Coverage I or II at *replacement cost,* subject to the following:

       **(1)**  We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

          **(a)**  the limit of liability under the policy applying to Coverage I or II;

          **(b)**  the *replacement cost* of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

          **(c)**  the full amount actually and necessarily spent to repair or replace the damaged building as determined shortly following the loss;

          **(d)**  the direct financial loss you incur; or

          **(e)**  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

       **(2)**  **Extended Dwelling Coverage Amount.** We will settle covered losses to the dwelling under Coverage I up to an additional 50% of the limit of liability shown in the Declarations for Coverage I. You agree to:

          **(a)**  insure the dwelling to 100% of its estimated *replacement cost* as agreed by us;

**(b)** make yearly adjustments of Coverage I reflecting changes in the cost of construction for the area;

**(c)** notify us of any addition or other remodeling which increases the replacement cost of the dwelling $5,000 or more;

    **i.** within 90 days of the start of the construction; or

    **ii.** before the end of the current policy period;

    whichever is longer and pay any resulting additional premium; and

**(d)** repair or replace the damaged dwelling.

If you fail to comply with any of the provisions, the limit of liability shown in the Declarations for Coverage I shall apply.

**(3)** When more than one layer of siding or roofing exists for **Building Property We Cover,** we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

When more than one layer of finished flooring exists we will pay for the finish of only one layer.

**(4)** If the cost to repair or replace is $5,000 or more, we will pay the difference between *actual cash value* and *replacement cost* only after the damaged or destroyed property has actually been repaired or replaced.

**(5)** You may disregard the *replacement cost* loss settlement provisions and make claim under this policy for loss or damage to buildings on an *actual cash value* basis but not exceeding the smallest of the following amounts:

**(a)** the applicable limit of liability;

**(b)** the direct financial loss you incur; or

**(c)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may still make claim on a *replacement cost* basis by complying with a.(4) above.

**(6)** You may apply up to the limit of liability for Coverage II to cover the increased cost of repairing or replacing the dwelling as a result of any additions or other remodeling started during the policy period, provided:

**(a)** the loss occurs after the actual construction on the addition or remodeling has begun; and

**(b)** the loss exceeds the limit of liability for Coverage I.

The amount of Coverage I available under this provision is limited to the amount remaining after any Coverage I loss has been adjusted.

This extension of coverage will cease 45 days after the work has been completed, or at the end of the policy period during which the work was started, whichever is greater.

**b.** **Full Value.** Personal property under Coverage III or Option E — Scheduled Personal Property, not otherwise described under **Loss Settlement, 5.c.,** *Actual Cash Value,* below, and awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings, at *replacement cost* at the time of loss subject to the following:

**(1)** We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

**(a)** the limit of liability of this policy applicable to the damaged, destroyed or stolen property;

**(b)** the *replacement cost* of the property or any part;

**(c)** the full amount actually and necessarily spent by the *insured* in repairing or replacing the property or any part;

**(d)** the direct financial loss you incur; or

**(e)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

**(2)** We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

**(3)** You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

This **Loss Settlement, 5.b.,** Full Value, is an optional coverage and applicable only if purchased and shown in the Declarations.

**c.** *Actual Cash Value.*

**(1)** Structures that are not buildings; and

**(2)** The following property:

    **(a)** antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

    **(b)** memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

    **(c)** personal property not maintained in good or workable condition;

    **(d)** personal property that is outdated or obsolete and is stored or not being used;

    **(e)** property not owned by any *insured;* and

    **(f)** motorized land vehicles or earth moving or excavating equipment used to service the *residence premises;* and

    if Full Value is not purchased and shown in the Declarations, then;

    **(g)** all other personal property; and

    **(h)** awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

**d.** Fences. Under Coverage I or II at *replacement cost* without deduction for depreciation but not exceeding the smallest of the following amounts:

**(1)** the limit of liability under Coverage I or II;

**(2)** the *replacement cost* of that part of the damaged fence for equivalent construction and use on the same premises as determined shortly following the loss;

**(3)** if you do not repair or replace the damaged fence at the same location we will not pay more than the limit of liability under the policy applying to Coverage I or II;

**(4)** the direct financial loss you incur; or

**(5)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the fence at the time of the loss.

**6.** **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

**a.** repair or replace any part to restore the pair or set to its value before the loss; or

**b.** pay the difference between *replacement cost* of the pair or set before and after the loss.

**7.** **Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

**a.** pay its own appraiser; and

**b.** bear the other expenses of the appraisal and umpire equally.

**8.** **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

   a. we reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by any *insured*.

12. **Mortgage Clause.**

   The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage I or II shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

   a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. pays any premium due under this policy on demand if you have neglected to pay the premium;

   c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

   d. complies with item 3.e. of Part A — Property Conditions.

   Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or nonrenewal takes effect.

   If we pay the mortgagee for any loss and deny payment to you:

   e. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   f. at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

   Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

15. **Recovered Property.** If you or were cover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. ***Salvage* Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage*.

## PART B — LIABILITY COVERAGES

**LIABILITY LOSSES WE COVER**

**COVERAGE V — PERSONAL LIABILITY**

If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

## COVERAGE VI — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees*. As to others, this coverage applies only:

1. to a person on the *insured location* with the permission of any *insured;* or

2. to a person off the *insured location,* if the *bodily injury:*

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of any *insured;*

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured;* or

   d. is caused by an animal owned by or in the care of any *insured.*

## LIABILITY LOSSES WE DO NOT COVER

1. Coverage V — Personal Liability and Coverage VI — Medical Payments to Others do not apply to *bodily injury* or *property damage:*

   a. which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;*

   b. arising out of *business* pursuits of any *insured* or the rental or holding for rental of any part of any premises by any *insured.*

   This exclusion does not apply to:

   (1) Activities which are ordinarily incident to non-*business* pursuits except as excluded in **h.** below;

   (2) Coverage V for the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

   (3) the rental or holding for rental of a residence of yours:

      (a) on an occasional basis for the exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an office, school, studio or private garage;

   c. arising out of the rendering or failing to render professional services;

   d. arising out of any premises owned or rented to any *insured* which is not an *insured location;*

   e. arising out of the ownership, maintenance, use, loading or unloading of:

      (1) aircraft.

      This item **e.**(1) does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

      (2) motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any *insured.*

      You have coverage for the following:

      (a) a trailer not towed by or carried on a motorized land vehicle;

      (b) a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

         i. not owned by any *insured;* or

         ii. owned by any *insured,* while on an *insured location;*

**(c)** a motorized golf cart;

**(d)** a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an *insured location,* which is:

    **i.** not designed for travel on public roads; and

    **ii.** not subject to motor vehicle registration, licensing or permits; or

**(e)** a motorized land vehicle in dead storage on an *insured location.*

**(3)** watercraft:

    **(a)** owned by, or rented to or used by any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

    **(b)** owned by, or rented to or used by any *insured* if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

    **(c)** powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any *insured.*

    However, outboard motors of 50 or more total horsepower are covered for the policy period if:

        **i.** you acquired them prior to the policy inception, and:

            **(i)** declared them at policy inception; or

            **(ii)** you ask us in writing to insure them within 45 days after you become the owner;

        **ii.** you acquire them during the policy period, provided you ask us to insure them:

            **(i)** during the policy period in which you become the owner; or

            **(ii)** within 45 days after you become the owner;

        whichever is greater, and pay any resulting additional premium from the date acquired.

    **(d)** designed as an air boat, air cushion, or similar type of craft; or

    **(e)** owned by, rented to or used by any *insured* which is a *personal watercraft.*

Exclusion **e.(3)** does not apply while the watercraft is stored.

Exclusions **d.** and **e.** do not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

**f.** arising out of:

    **(1)** the entrustment by any *insured* to any person;

    **(2)** the supervision by any *insured* of any person;

    **(3)** any act, decision or omission by any *insured;*

    **(4)** any liability statutorily imposed on any *insured;* or

    **(5)** any liability assumed through an unwritten or written agreement by any *insured;*

    with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Part B of this policy.

**g.** caused directly or indirectly by war, including the following and any consequences of the following:

    **(1)** undeclared war, civil war, insurrection, rebellion, or revolution;

    **(2)** warlike act by a military force or military personnel; or

    **(3)** destruction or seizure or use for a military purpose.

    Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**h.** which results from the legal liability of any *insured* because of home care services, daycare, and any other hospice-related activity provided to any person on a regular basis by or at the direction of:

    **(1)** any *insured;*

(2) any employee of any *insured;*

(3) any other person actually or apparently acting on behalf of any *insured.*

Regular basis means more than 20 hours per week. This exclusion does not apply to:

(1) home care services provided to the relatives of any *insured;*

(2) occasional or part-time home care services provided by any *insured* under 23 years of age.

i.      arising out of physical or mental abuse, sexual molestation or sexual harassment.

j.      arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana, PCP and all narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k.      arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 25 feet in overall length with or without auxiliary power.

2.   **Coverage V — Personal Liability** does not apply to:

a.      Liability:

(1) for any loss assessment charged against you as a member of an association of property owners;

(2) under any contract or agreement. However, this item **2.a.(2)** does not apply to written contracts:

(a) that directly relate to the ownership, maintenance or use of an *insured location;* or

(b) where the liability of others is assumed by the *insured* prior to an *occurrence;*

unless excluded in **2.a.(1)** above or elsewhere in this policy;

(3) for *punitive damages* awarded against any *insured;*

(4) arising out of any illegal act committed by or at the direction of any *insured.*

b.      *property damage* to property owned by any *insured;*

c.      *property damage* to property rented to, occupied or used by or in the care of any *insured;*

d.      *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *insured* under:

(1) any workers compensation;

(2) non-occupational disability; or

(3) occupational disease law;

e.      *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f.      *bodily* injury to any *insured;*

g.      *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants* at any time. This includes any loss, cost or expense arising out of any:

(1) request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants;*

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants;*

3.  **Coverage VI — Medical Payments to Others** does not apply to *bodily injury:*

   **a.** to a *residence employee* if the *bodily injury* occurs off the *insured location* and does not arise out of or in the course of the *residence employee*'s employment by an *insured;*

   **b.** to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers compensation; non-occupational disability, or occupational disease law;

   **c.** from any nuclear reaction, radiation or radio active contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

   **d.** to any person, other than a *residence employee* of any *insured,* regularly residing on any part of the *insured location.*

**LIABILITY LOSSES WE DO NOT COVER** does not apply to personal injury as defined under *Bodily Injury* **2.b.(1)** and **2.b.(2).**

---

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

1.  **Claim Expenses. We pay:**

   **a.** expenses we incur and costs taxed against any *insured* in any suit we defend;

   **b.** premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage V — Personal Liability.** We are not obligated to apply for or furnish any bond;

   **c.** reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit; and

   **d.** interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2.  **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured.*

3.  **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $1,000 per *occurrence* for *property damage* to property of others caused by any *insured.*

   We will not pay for *property damage:*

   **a.** if insurance is otherwise provided in this policy;

   **b.** caused intentionally by any *insured* who is 13 years of age or older;

   **c.** to property owned by or rented to any *insured,* a tenant of any *insured,* or a resident in your household; or

   **d.** arising out of:

     (1) *business* pursuits;

     (2) any act or omission in connection with a premises owned, rented or controlled by an *insured,* other than the *insured location;* or

     (3) the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles.

     This item **3.d.(3)** does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured.*

4.  **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $1,000 for:

   **a.** the legal obligation of an *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

   **b.** loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

c.   loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

d.   loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of *business* pursuits or dishonesty of any *insured*.

Defense:

a.   We may make any investigation and settle any claim or suit that we decide is appropriate.

b.   If a suit is brought against any *insured* for liability under the Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

c.   We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

5.   **Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

a.   the statutorily imposed limit; or

b.   $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

---

## PART B — LIABILITY CONDITIONS

---

1.   **Limit of Liability.** Our total liability under Coverage V for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage V stated in the Declarations. This limit is the same regardless of the number of *insureds,* claims made or persons injured.

Our total liability under Coverage VI for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage VI stated in the Declarations.

2.   **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

3.   **Your Duties After Loss.** In case of an accident or *occurrence,* the *insured* shall perform the following duties that apply:

a.   give written notice to us or our agent as soon as practicable, which sets forth:

(1)   the identity of the policy and *insured;*

(2)   reasonably available information on the time, place and circumstances of the accident or *occurrence;*

(3)   names and addresses of any claimants and witnesses; and

(4)   in case of loss under the Credit Card or Fund Transfer Card Coverage also notify the Credit Card or Fund Transfer Card Company;

b.   promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence;*

c.   at our request, help us:

(1)   to make a settlement;

(2)   to enforce any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

(3)   with the conduct of suits and attend hearings and trials;

(4)   to secure and give evidence and obtain the attendance of witnesses;

**d.**   under the **Additional Liability Coverages** — Damage to the Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *insured's* control;

**e.**   submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages,** Credit Card, Fund Transfer Card, or Forgery and Counterfeit Money Coverage, stating the amount and cause of loss;

**f.**   the *insured* shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury*.

**4.**   **Duties of an Injured Person — Coverage VI — Medical Payments to Others.** The injured person or someone acting for the injured person will:

**a.**   give us written proof of claim, under oath if required, as soon as practical;

**b.**   authorize us to obtain copies of medical reports and records.

The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

**5.**   **Payment of Claim — Coverage VI — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

**6.**   **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any *insured*. Further, no action with respect to Coverage V shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

**7.**   **Bankruptcy of an *Insured*.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

**8.**   **Other Insurance — Coverage V — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## PART A AND PART B — PROPERTY AND LIABILITY CONDITIONS

**1.**   **Policy Period and Changes.**

**a.**   The effective time of this policy is 12:01 A.M. at the *residence premises*. This policy applies only to loss under Part A, or *bodily injury* or *property damage* under Part B, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

**b.**   Changes:

(1)   Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

(2)   This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

**2.**   **Concealment or Fraud.** This policy will be void if any *insured* has, before or after a loss:

**a.**   intentionally concealed or misrepresented any material fact or circumstance; or

**b.**   made false statements or engaged in fraudulent conduct relating to this insurance;

with the intent to deceive.

**3.**   **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

DC-4933/CAEP 2/21                        - 17 -

This liberalization clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

      (1) When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 31 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 31 days before the date cancellation takes effect.

   c. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

   Subrogation does not apply under Part **B** to **Coverage VI — Medical Payments to Others** or **Additional Liability Coverages,** Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

   b. *insured* includes:

      (1) any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises;* and

      (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## POLICY DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household, and "we," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. *"Actual cash value"*

   a. When the damage to property is economically repairable, *actual cash value* means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

**b.** When the loss or damage to property creates a total loss, *actual cash value* means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

**c.** Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

**2.** *"Bodily injury"* means:

**a.** bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

*Bodily injury* does not include any communicable disease transmitted by any *insured* to any other person;

**b.** personal injury:

**(1)** arising out of one or more of the following offenses:

**(a)** false arrest, detention or imprisonment, or malicious prosecution;

**(b)** libel, slander or defamation of character; or

**(c)** invasion of privacy, wrongful eviction or wrongful entry.

**(2)** coverage does not include:

**(a)** liability assumed by any *insured* under any contract or agreement except any indemnity obligation assumed by the *insured* under a written contract directly relating to the ownership, maintenance or use of the *insured location;*

**(b)** injury arising out of any illegal act committed by or at the direction of any *insured;*

**(c)** injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any *insured;*

**(d)** injury arising out of the *business pursuits* of any *insured.* This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

**(e)** injury arising out of civic or public activities performed for pay by any *insured;* or

**(f)** *punitive damages* awarded against any *insured.*

**3.** *"Business"* includes trade, profession or occupation.

**4.** *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

**5.** *"Insured"* means you and the following residents of your household:

**a.** your relatives;

**b.** any other person under the age of 21 who is in the care of any person named above.

Under Part B — Liability Coverage, *"insured"* also means:

**c.** with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** A person or organization using or having custody of these animals or watercraft in the course of any *business,* or without permission of the owner is not an *insured;*

**d.** with respect to any vehicle to which this policy applies:

**(1)** any person while engaged in your employment or the employment of any person included in **a.** or **b.**; or

**(2)** any other person using the vehicle on an *insured location* with any *insured's* permission.

**6.** *"Insured location"* means:

**a.** the *residence premises;*

**b.** that part of any other premises, other structures and grounds, used by you as a residence and which is shown in the Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

**c.** any premises used by you in connection with the premises included in **a.** or **b.**;

    **d.**   any part of a premises not owned by any *insured* but where any *insured* is temporarily residing;

    **e.**   vacant land owned by or rented to any *insured* other than farmland;

    **f.**   land owned by or rented to any *insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *insured;*

    **g.**   individual or family cemetery plots or burial vaults of any *insured;* or

    **h.**   any part of a premises occasionally rented to any *insured* for other than *business* purposes.

**7.**   *"Occurrence"* means an accident, including exposure to conditions which results in:

    **a.**   *bodily injury;* or

    **b.**   *property damage;*

    during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

**8.**   *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**9.**   *"Pollutants"* means:

    **a.**   liquid fuels;

    **b.**   lead or any materials containing lead;

    **c.**   asbestos or any materials containing asbestos;

    **d.**   radon;

    **e.**   formaldehyde or any materials containing formaldehyde;

    **f.**   electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

    **g.**   carbon monoxide; or

    **h.**   any other irritant or contaminant, including waste, vapor, fumes, acids, alkalis, chemicals or radioactive substances.

**10.**  *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

    *Property damage* does not include loss caused by any communicable disease transmitted by any *insured.*

**11.**  *"Punitive damages"* means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for *bodily injury* or *property damage.*

**12.**  *"Replacement cost"*

    **a.**   In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

    **b.**   In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

**13.**  *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises,* including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

**14.**  *"Residence premises"* means:

    **a.**   the one, two, three or four family dwelling, used principally as a private residence;

    **b.**   other structures and grounds; or

    **c.**   that part of any other building;

    where you reside and which is shown in the Declarations.

**15.**  *"Salvage"* means property having value and included in a covered loss.

## MANDATORY COVERAGE

**OPTION EEE**

**WORKERS COMPENSATION (Residence Employee Mandatory Coverage — California Only)**

We agree, with respect to *residence employees:*

1. **Under Coverage A**

   To pay when due all benefits required of an *insured* by the California Workers Compensation Law; and

2. **Under Coverage B**

   To pay on behalf of an *insured* all damages for which the *insured* is legally liable because of *bodily injury* sustained by a *residence employee*. The *bodily injury* must be caused by accident or disease and arise out of and in the course of employment by the *insured* while:

   a. in the United States of America, its territories or possessions, or Canada; or

   b. temporarily elsewhere if the *residence employee* is a citizen or resident of the United States or Canada.

   Coverage **B** does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

3. **Who Is Covered**

   A *residence employee* is covered if during the 90 calendar days immediately before the date of injury the employee has:

   a. actually been engaged in such employment by the *insured* for no less than 52 hours, and

   b. earned no less than one hundred dollars ($100) in wages.

4. **Application of Coverage**

   This insurance applies only to *bodily injury* which occurs during the policy period. If the *bodily injury* is a disease, it must be caused or aggravated by the conditions of the *residence employee's* employment by the *insured.*

5. **Policy Provisions**

   This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

   a. The definition of *bodily injury, business, insured* and *residence employee.*

   b. Under **Part A and Part B — Property and Liability Conditions:**

      1. Policy Period and Changes.

      4. Cancellation.

      6. Assignment.

      7. Our Right to Recover Payment.

   c. Under **Part B — Liability Conditions:**

      3. Your Duties After Loss.

      6. Suit Against Us.

   d. Under **Part B — Additional Liability Coverages:**

      1. Claim Expenses.

      2. First Aid Expenses.

   e. Our agreement to defend the *insured* as provided under **Coverage V — Personal Liability.**

6.  **Additional Provisions Applicable to Coverage A**

    The following provisions are applicable to Coverage **A**:

    a.  We shall be directly and primarily liable to a *residence employee* of an *insured* entitled to the benefits of the California Workers Compensation Law.

    b.  As between the *residence employee* and us, notice to or knowledge of the *occurrence* of the injury on the part of an *insured* will be deemed notice or knowledge on our part.

    c.  The jurisdiction of an *insured* will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

    d.  We will be subject to the orders, findings, decisions or awards rendered against an *insured,* under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an *insured* and us as to payments by either in discharge of an *insured's* liability for compensation.

    e.  The *residence employee* has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the *residence employee,* we will pay it directly to the *residence employee.*

        Your obligation to the *residence employee* will be discharged to the extent of such payment.

7.  **Limits of Liability Coverage B**

    Our total limit of liability will not exceed $100,000 for all damages because of *bodily injury:*

    a.  sustained by one or more *residence employees* in any one accident; or

    b.  caused by disease and sustained by a *residence employee.*

    Our total limit of liability will not exceed $500,000 for all damages arising out of *bodily injury* by disease regardless of the number of *residence employees* who sustain *bodily injury* by disease.

8.  **Other Insurance**

    This insurance does not apply to any loss to which other valid and collectible Workers Compensation or Employers' Liability Insurance applies.

9.  **Conformity to Statute**

    Terms of this insurance which are in conflict with the California Workers Compensation Law are amended to conform to that law.

10. **Exclusions**

    This policy does not apply:

    a.  to liability for additional compensation imposed on an *insured* under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of the serious and willful misconduct of an *insured,* or because of *bodily injury* to an employee under 16 years of age and illegally employed at the time of injury.

    b.  to liability for *bodily injury* arising out of *business* pursuits of an *insured.*

    c.  under Coverage B:

        (1) to liability assumed by the *insured* under any contract or agreement.

        (2) to *bodily injury* by disease unless a written claim is made or suit brought against the *insured* within 36 months after the end of the policy period.

        (3) to any obligation under a workers compensation, unemployment or disability benefits law or any similar law.

All other provisions of this policy apply.

# AMENDATORY ENDORSEMENT — CALIFORNIA

It is agreed that the policy is amended as follows:

## PART A — PROPERTY COVERAGES

### BUILDING PROPERTY WE COVER

The following paragraph is added below COVERAGE I — DWELLING:

If a state of emergency under California Law is declared and the Coverage I — DWELLING policy limits are insufficient to rebuild or replace the primary dwelling, you may combine the policy limits for Coverage I — DWELLING and Coverage II — OTHER STRUCTURES, for any of the covered expenses reasonably necessary to rebuild or replace the damaged or destroyed dwelling. This provision does not increase the limit of liability that applies to Coverage II — OTHER STRUCTURES. Claims payments for other structures in excess of the amount applied towards the necessary cost to rebuild or replace the damaged or destroyed primary dwelling shall be paid according to the terms of the policy.

### BUILDING PROPERTY LOSSES WE DO NOT COVER

The following is added to item **10. Earth Movement**:

If a loss or damage results from a combination of perils, one of which is a landslide, mudslide, mudflow or debris flow, coverage will be provided if an insured peril is the efficient proximate cause of the loss or damage and coverage would otherwise be provided for the insured peril.

**COVERAGE IV — LOSS OF USE** is deleted and replaced by the following:

### COVERAGE IV — LOSS OF USE

1.  If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense**, meaning any necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

    Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, but not to exceed 24 months.

    However, if a state of emergency under California law is declared, payment will be for a period no less than:

    a.  The time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere; or

    b.  24 months from the date of loss;

    Whichever is shorter.

    If you, acting in good faith and with reasonable diligence, encounter a delay or delays in approval for, or reconstruction of, the home or residence that are beyond your control, we shall provide an additional extension of 12 months. Circumstances beyond your control include, but are not limited to:

    c.  Unavoidable construction permit delays;

    d.  The lack of necessary construction materials; or

    e.  The unavailability of contractors to perform the necessary work.

    We shall provide one or more additional extensions of six months for good cause.

2.  If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover:

    **Fair Rental Value**, meaning the **fair rental value** of that part of the *residence premises* you rent to others or hold for rental, less any expenses that do not continue while the premises is uninhabitable.

    Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

DC-4717/CAEP 4/21

3.  If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a loss we cover in this policy we cover the **Additional Living Expense** as provided under **1.** or **Fair Rental Value** as provided under **2.** above for no more than two weeks during which use is prohibited.

4.  For a loss that is otherwise not subject to **1.**, **2.**, or **3.**, in the event of a "state of emergency" as defined in Section 8558 of the Government Code, that is accompanied by an order of civil authority restricting access to the dwelling, related to a covered peril, **Additional Living Expenses** will be covered for at least two weeks. Extensions of two weeks may be provided for good cause.

The total limit of liability available for **Additional Living Expense** and **Fair Rental Value** is shown in your Policy Declarations page and is the most we will pay for all loss or costs under **1.**, **2.**, and **3.**, above.

The periods of time under **1.**, **2.**, **3.**, and **4.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

---

**ADDITIONAL PROPERTY COVERAGES**

Item **6.** is deleted and replaced by the following:

6.  **Building Ordinance or Law Coverage.** Damage to building or personal property we cover caused by a Building or Personal Property Loss We Cover will be settled on the basis of any ordinance or law that regulates the construction, repair, or demolition of this property.

    If a total loss has occurred and:

    a.  The dwelling or other structure is built at a new location; or

    b.  You purchase an existing dwelling or other structure at a new location;

    we will pay the increased costs you incur, subject to the limit of liability shown in your Policy Declarations, you would have incurred due to the enforcement of any ordinance or law had you repaired, rebuilt, or replaced the dwelling or other structure at the loss location.

    This coverage does not apply:

    a.  to loss caused by the peril of *earthquake*.

    b.  to loss to any undamaged portion of the building or personal property we cover.

    We do not cover:

    a.  the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    b.  the costs to comply with any ordinance which requires any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants*.

    This is an additional amount of insurance.

---

## PART A — PROPERTY CONDITIONS

The following is added under item **5. Loss Settlement**, under provisions **5.a.(1)** and **5.a.(2)**:

If the dwelling is rebuilt at a new location, the costs described in **5.a.(1)** and **5.a.(2)** above are limited to the cost which would have been incurred, including any increased costs you would have incurred due to the enforcement of any ordinance or law, if the dwelling had been built at the loss location.

The following is added to item **8. Suit Against Us**:

If the loss is related to a state of emergency under California law, the time to bring an action is extended to within two years after the inception of the loss or damage.

## PART B — LIABILITY COVERAGES

**ADDITIONAL LIABILITY COVERAGES**

The following is added to item **5. Statutorily Imposed Vicarious Parental Liability**:

> We shall have no duty to settle or defend a claim or suit seeking damages potentially covered by this section.

## PART B — LIABILITY CONDITIONS

Item **2.** is deleted and replaced by the following:

2.   **Severability of Insurance.** The limits of liability of this policy apply separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.* This condition also has no effect on the applicability of exclusions to all *insureds* based upon the conduct of any *insured.*

## PART A AND B — PROPERTY AND LIABILITY CONDITIONS

Item **5.** is deleted and replaced by the following:

5.   **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 75 days before the expiration of this policy. Proof of mailing shall be sufficient proof of notice.

## POLICY DEFINITIONS

The lead-in paragraph to Policy Definitions is deleted and replaced by the following:

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

a.   your spouse, if a resident of the same household; or

b.   your *domestic partner,* if a resident of the same household.

  *"Domestic partner"* means a person living as a continuing partner with you and:

  (1)   is at least 18 years of age and competent to contract;

  (2)   is not a relative, and

  (3)   shares with you the responsibility for each other's welfare, evidence of which includes:

    (a)   the sharing in the domestic responsibilities for the maintenance of the household; or

    (b)   having joint financial obligations, resources, or assets; or

    (c)   one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

  *Domestic partner* does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

"We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

Item **1.** is deleted and replaced by the following:

1.   *"Actual cash value"*

a.   When the damage to property is economically repairable, *actual cash value* shall mean the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

b.   Otherwise, *actual cash value* shall mean the cost to replace the item with new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

The following is added to **2.b.(2):**

    (g)   injury arising out of physical or mental abuse, corporal punishment, sexual molestation or sexual harassment.

All other provisions of this policy apply.

DC-4717/CAEP 4/21

## OPTION FFF — LOSS ASSESSMENT COVERAGE

For an additional premium, we agree to pay your share of any loss assessment charged during the policy period against you by the association of property owners up to the limit of liability stated in the Declarations, when the assessment is made as a result of:

1.  each direct loss to the property owned by all members collectively, caused by a loss we cover, under **Part A — Property Coverages** of this policy;

2.  each *occurrence* to which **Part B — Liability Coverages** of this policy would apply;

3.  liability for each act of a director, office or trustee in the capacity as a director, officer or trustee, provided:

    a.  the director, officer or trustee is elected by the members of the association of property owners; and

    b.  the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

Under **Part B — Liability Coverages, Liability Losses We Do not Cover**, item 2.a (1) is deleted.

**SPECIAL LIMIT** — We will not pay more than $1,000 of your assessment per unit that results from a deductible in the insurance purchased by the association of property owners.

**DEDUCTIBLE** — We will pay only that part of your assessment per unit that exceeds $250. No other deductible applies to this coverage.

All other provisions of this policy apply.

DC-4703/GAEP 6/89

## OPTION VV — THEFT OF BUILDING MATERIALS

For an additional premium, under Coverage I — Dwelling, Coverage II — Other Structures and Coverage III — Personal Property, we agree to cover:

theft in or to or from a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied.

All other provisions of this policy apply.

DC-4715/GAEP 6/89



13000T2DEBDEV03071234T787